# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEWIS S. ROSENBLOOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-04087 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| BARCLAYS BANK PLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lewis Rosenbloom is a former partner at the now-defunct international law firm Dewey & LeBoeuf, LLP ("Dewey"). On June 2, 2013, Rosenbloom filed suit in this Court alleging that Defendant Barclays Bank PLC ("Barclays") conspired with Dewey's management to fraudulently induce Rosenbloom to enter into a loan in connection with Rosenbloom's retirement from Dewey. On August 23, 2013, Barclays filed its own lawsuit in London, England to enforce the terms of the loan (the "English Action"). Rosenbloom has now filed in this Court a Motion for Preliminary Antisuit Injunction (Dkt. No. 32) (the "Motion") seeking to enjoin Barclays from further litigating the English Action. For the reasons explained below, the Court denies Rosenbloom's Motion.

## BACKGROUND

In May 2007, Rosenbloom executed a loan agreement with Barclays under which he was to receive $720,000 (the "Loan Agreement"). (Sec. Am. Compl. Ex. C, Dkt. No. 43-3.) The loan was made in connection with Rosenbloom's contemplated withdrawal from the Dewey partnership and his transition to "of counsel" status. At the time, Rosenbloom had approximately $700,000 in his firm capital account and, under the Dewey Partnership Agreement, that amount would be returned to Rosenbloom in installments over three years after his departure from the

Dewey partnership. (Shaw Decl. Exs. 7, 8 at § 7.6(a)(i), Dkt. No. 37.) It appears that Dewey offered to advance Rosenbloom the money immediately if he took out a loan from Barclays to fund his capital account. Dewey would then assume the Loan Agreement and return Rosenbloom's capital by repaying the loan. (*Id.* Exs. 3, 4, 6.)

The Loan Agreement includes several provisions that purport to establish the "Governing Law." One such provision, Section 11.1, provides that the Loan Agreement will be "governed by and construed in accordance with the laws of England." (Sec. Am. Compl. Ex. C at § 11.1, Dkt. No. 43-3.) Another provision, Section 11.2, states:

> In the event that the Bank files an action before the English courts to enforce the terms of the Loan, the Borrower hereby irrevocably submits to the personal jurisdiction of the English courts, and irrevocably waives any objection to such jurisdiction or inconvenient forum.

(*Id.* at § 11.2.) The Loan Agreement also contains a clause that requires Rosenbloom to "indemnify [Barclays] on demand against any loss, liability, cost or expense that the Bank may reasonably incur as a consequence of making [a] demand [of repayment]. . . ." (*Id.* at § 10.4.)

On July 13, 2009, Rosenbloom left the Dewey partnership and became "of counsel" with the firm. (Shaw Decl. Ex. 6, Dkt. No. 37.) After Rosenbloom's departure, Dewey suffered a series of financial setbacks and ultimately entered Chapter 11 bankruptcy in May 2012. Barclays subsequently looked to Rosenbloom to satisfy the remaining obligation under the Loan Agreement. After negotiations between the parties fell apart, Rosenbloom filed this action in June 2013, alleging, *inter alia*, that Barclays and Dewey had conspired to defraud him by means of the Loan Agreement.

In July 2013, Barclays sent a formal demand letter informing Rosenbloom that he was in default of the outstanding loan amount of $676,800.00. (Rajagopal Decl. Ex. 1, Dkt. No. 34-1.) On August 13, 2013, Barclays's English counsel sent a letter (the "August 2013 Letter") to

2

notify Rosenbloom that, unless the outstanding sums under the Loan Agreement were paid within seven days, Barclays would file suit in England. (Rajagopal Decl. Ex. 2, Dkt. No. 34-2.) The letter explicitly cited Section 11.2 and noted that by filing suit in U.S. District Court, Rosenbloom had "exposed him[self] to the very real risk of parallel litigation proceedings." (*Id.*) The letter also warned that Rosenbloom would be required to indemnify Barclays for its litigation costs pursuant to Section 10.4 of the Loan Agreement. (*Id.*) Further attempts to resolve the dispute were fruitless and, on August 23, 2013, Barclays filed the English Action against Rosenbloom. (Rajagopal Decl. ¶ 10, Dkt. No. 34.)

Shortly after Barclays filed the English Action, Rosenbloom filed a motion for a preliminary injunction in this Court, seeking to enjoin any prosecution of the English Action. Rosenbloom withdrew the motion without prejudice after the parties agreed to stay this case, as well as the English Action, in order to obtain informal discovery from the Dewey bankruptcy estate and engage in settlement discussions. After receiving written discovery from the Dewey estate, however, settlement talks between the parties broke down. With the agreement of the parties, the Court lifted the stay on March 12, 2014. Shortly thereafter, Plaintiff filed the instant Motion.

## DISCUSSION

Generally, a party seeking a preliminary injunction must show: (1) some likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm to the movant if the relief is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). It is well-established that a federal court may enjoin a party subject to its jurisdiction from litigating in another country. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993); *see also Goss Int'l Corp. v. Man Roland Druckmaschinen*

3

*Aktiengesellschaft*, 491 F.3d 355, 360 (8th Cir. 2007); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 652 (2d Cir. 2004). But there is a Circuit split regarding how the standard for preliminary injunctions should be applied in the context of foreign antisuit injunctions.

Under the more "conservative" approach adopted by the First, Second, Third, Sixth, and District of Columbia Circuits, a district court may issue a foreign antisuit injunction only if the movant demonstrates that "(1) an action in a foreign jurisdiction would prevent United States jurisdiction or threaten a vital United States policy, and (2) the domestic interests outweigh concerns of international comity." *Zimnicki v. Neo-Neon Int'l, Ltd.*, No. 06 C 4879, 2009 WL 2392065, at *2 (N.D. Ill. July 30, 2009) (citing *Goss Int'l Corp.,* 491 F.3d at 359). In contrast, the Fifth and Ninth Circuits follow a more "liberal" or lax approach that places less emphasis on international comity and approves the issuance of an antisuit injunction "when necessary to prevent duplicative and vexatious foreign litigation and to avoid inconsistent judgments." *Id*. While the Seventh Circuit has not yet planted its flag firmly in one camp or the other, it has expressed an inclination toward the laxer standard. *See Allendale*, 10 F.3d at 431.

To obtain an antisuit injunction in this Circuit, the movant must first establish that the parties and issues in both proceedings are the same, and the resolution of the first action would be dispositive of the action to be enjoined. *Zimnicki*, 2009 WL 2392065, at *2. Additionally, the movant must demonstrate that the balance of domestic interests, such as the prevention of vexatious, harassing, or oppressive litigation, outweighs concerns regarding international comity. *Allendale*, 10 F.3d 431-32. In this case, the parties do not dispute that the parties and issues are the same for both actions and that the resolution of the case in this Court would be dispositive of

the English Action. However, Rosenbloom has failed to demonstrate that domestic interests favoring an injunction outweigh concerns regarding international comity.

Specifically, Rosenbloom has failed to show that the English Action is vexatious or oppressive. The only evidence that Rosenbloom presents in support of such intent is the purported "tone and language" of the August 2013 Letter. Rosenbloom claims that Barclays' threats regarding parallel litigation proceedings and the potential costs of indemnification "clearly demonstrate Barclays' vexatious and oppressive intent." (Pl's Mem. at 9-10, Dkt. No. 33.) However, the Court does not read the August 2013 Letter as evidencing such ill motives. Rather, the August 2013 Letter merely references bargained-for contractual provisions in the course of fairly typical pre-litigation negotiations between two sophisticated parties over a disputed sum.

Moreover, enjoining prosecution of the English Action would actually frustrate the important domestic policy concern of maintaining the integrity of forum selection clauses.[1] Enforcement of forum selection clauses serves the important domestic interest of fostering international trade. *See Fellowes, Inc. v. Fellowes Bus. Machs. (Changzhou)*, No. 11-cv-6289, 2011 WL 8792153, at *3-4 (N.D. Ill. Sept. 26, 2011), *adopted in relevant part*, 2012 WL 3544841 (N.D. Ill. Aug. 16, 2012). *See also Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 594 (Fed. Cir. 2013) (affirming district court's denial of antisuit injunction where injunction would "undermine the parties' choice of forum"). Under the plain language of

---

[1] Rosenbloom argues that Section 11.2 is not actually a "forum selection" provision. (Pl's Reply at 1, Dkt. No. 40.) The Court disagrees. Section 11.2 is a forum selection clause, albeit a "permissive clause" unlikely to provide a basis for Barclays to dismiss a case brought in a different forum than that specified in the agreement. *See Schwarz v. Sellers Mkts., Inc.*, 812 F.Supp.2d 932, 936 (N.D. Ill. 2011).

Section 11.2, Rosenbloom agreed to subject himself to suit in the English court system.[2] *Medline Indus., Inc. v. Maersk Med. Ltd.*, No. 02 C 2805, 2004 WL 422718, at *7 (N.D. Ill. Feb. 24, 2004) ("When determining the meaning and legal effect of a contract [under English law], the words in the contract are given their plain and ordinary meaning.") (citing *Cooke & Arkwright v. Hadon*, [1987] 2 Lloyd's Rep. 579, 582 (C.A.)). Allowing a party to a forum selection clause such as Section 11.2 to file a preemptive suit in a forum that is not contemplated under the agreement, and then enjoin litigation in a bargained-for forum, would run contrary to the important domestic interest of enforcing forum selection clauses.

Rosenbloom argues that the Seventh Circuit's decision in *Allendale* is dispositive in his favor. In *Allendale*, the defendant-insured had lost one hundred million dollars' worth of computer inventory in a fire in one of its warehouses. 10 F.3d at 427. The plaintiffs, insurers of the inventory, filed suit in the Northern District of Illinois seeking a declaratory judgment that the cause of the fire was arson committed by the defendant-insured, and thus there was no coverage for the loss. *Id.* After the insurers filed suit in the United States, the insured sued one of the insurers in a French commercial court. *Id.* The French suit was stayed pending a criminal investigation, but the stay was lifted after the insured argued that the criminal investigation was on the verge of completion and would result in a conclusion that there had been no arson. *Id.* The district court in the United States entered an antisuit injunction to preclude further litigation of the French case, and the Seventh Circuit affirmed the decision.

---

[2] Although the subject has not been briefed by the parties, the Court assumes for the purposes of this Motion that English law governs construction of the Loan Agreement in accordance with Section 11.1. *See Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 856 (7th Cir. 1992) ("In diversity cases, federal courts apply the substantive law of the state where the suit is brought, including the state's choice of law rules."); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 754-55 (2d Dist. 1987) (In Illinois, an express choice of law provision will be given effect, subject to two limitations: 1) there must be a sufficient relationship between the chosen forum, the parties, or the transaction; and 2) it must not offend Illinois public policy).

*Allendale* is readily distinguishable from the present case. First, the plaintiff in *Allendale* was not seeking an injunction that would undermine a bargained-for forum selection clause between two commercially sophisticated parties.[3] Second, the Seventh Circuit placed great emphasis on the fact that the French court in *Allendale*—which was actually a panel of part-time arbitrators—was ill-equipped to do justice in the document intensive lawsuit, and that duplicate litigation would unduly prejudice the plaintiffs. *Id.* at 430. Here, Rosenbloom has not argued that the forum Barclays chose for the English Action is inadequate to handle a contract dispute fairly. Indeed, U.S. courts generally recognize that English courts are more than capable of handling complex commercial litigation. *See, e.g., M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12 (1972); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998). Furthermore, the Loan Agreement's choice of law provision requires it to be construed under English Law. It may be fairly assumed an English court is at least as well-equipped as a U.S. court to interpret and apply English law. Finally, although it was not an issue under the facts of *Allendale*, the Seventh Circuit acknowledged that the outcome might have been different if the plaintiff had brought that declaratory judgment action solely for the purpose of "wresting the choice of forum from the 'natural' plaintiff." 10 F.3d at 431. Rosenbloom, in contrast, does appear to have initiated the present lawsuit (which includes a claim for declaratory judgment) as a preemptive strike to prevent the arguably natural plaintiff (*i.e.*, Barclays) from enforcing the Loan Agreement in a forum that Rosenbloom now finds undesirable despite the fact that it is a forum expressly permitted by the Loan Agreement itself.

---

[3] In fact, the only case cited by Rosenbloom that entailed a court issuing an antisuit injunction involving a contractual forum selection clause is *Galco Food Prods., Ltd. v. Goldberg*, No. 71-C-1201, 1971 WL 16640 (N.D. Ill. July 16, 1971). In that case, a forum selection clause expressly permitted either party to a contract to sue in either Illinois or Canada. *Id.* at *2. After one party sued in Illinois, the other filed a separate suit in Canada. *Id.* at *1. The *Galco* court enjoined the defendant from pursuing the Canadian case, reasoning that Illinois was the first suit that had been instituted. *Id.* at *2. The Court does not find *Galco* analogous to the present case.

7

Rosenbloom also contends that because he alleges that the Loan Agreement was established through fraud, the Loan Agreement and Section 11.2 are void *ab initio*. The Court disagrees. It is well-established that a forum selection clause applies in a case alleging fraud, unless the clause itself is a product of the fraud. *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 443 (7th Cir. 2012). Here, Rosenbloom does not assert that Section 11.2 was fraudulent in nature. Indeed, it would be difficult for him to do so given the clear and straightforward nature of Section 11.2. *See id.* (noting that a forum selection clause should be enforced where it "is not unclear, in illegible print, in Sanskrit or hieroglyphics, or otherwise suggestive of fraudulent intent."). Rosenbloom also argues that he would be prejudiced by the expense and inconvenience of litigating in England, while Barclays would be "neither prejudiced nor burdened by litigating this matter in the United States." (Pl's Mot. at 10, Dkt. No. 33.) Again, the Court disagrees. While this Court shares the concern expressed in *Allendale* regarding "the absurd duplication of effort" posed by parallel litigations, 10 F.3d at 430-31, that unfortunate circumstance does not warrant effectively rewriting the Loan Agreement and nullifying the forum selection clause to which Rosenbloom agreed. Disregarding the clear intent of the parties in Section 11.2 would prejudice Barclays by frustrating its legitimate contractual expectations. Meanwhile, as noted before, any prejudice to Rosenbloom—of either litigating in England or facing parallel litigation—is at least partly of his own making.

Finally, Rosenbloom argues that the English Action should be enjoined because of the potential for conflicting verdicts issued by this Court and the court in the English Action. However, the Seventh Circuit has explicitly recognized the possibility of a United States court and a foreign court simultaneously exercising concurrent jurisdiction. *See Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 684 (7th Cir. 1987) (noting that it is proper for United States

district court and foreign court to exercise concurrent jurisdiction). Moreover, once one forum or the other reaches verdict, the doctrine of *res judicata* will mitigate the risk of conflicting verdicts. *Laker Airways v. Sabena, Belgian World Airways*, 731 F.2d 909, 926-27 (D.C. Cir. 1984) ("[P]arallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in which one can be plead as *res judicata*.").

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Preliminary Antisuit Injunction is denied.

Entered:

Dated: June 16, 2014

_____
Andrea R. Wood
United States District Judge